1

2  **LTL ATTORNEYS LLP**
   Vincent K. Yip (Bar No. 170665)
3  Peter J. Wied (Bar No. 198475)
   Casey H. Kempner (Bar No. 272149)
4  LTL ATTORNEYS LLP
   300 S. Grand Avenue, 14th Floor
5  Los Angeles, CA 90071
   Telephone: (213) 612-8900
6  Facsimile: (213) 612-3773

7  Counsel for Defendants
   Nanya Technology Corporation,
8  Nanya Technology Corporation U.S.A.,
   and Nanya Technology Corporation Delaware
9

10

11              UNITED STATES DISTRICT COURT

12      NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

13 | LONE STAR SILICON                | CASE NO.: 3:17-cv-04032-WHA
   | INNOVATIONS LLC,

14
   |                                  | **NANYA DEFENDANTS' NOTICE**
15 |                  Plaintiff,      | **OF MOTION AND MOTION TO**
   |                                  | **DISMISS OR IN THE**
16 |        v.                        | **ALTERNATIVE STAY PENDING**
   |                                  | ***INTER PARTES* REVIEW OF THE**
17 | NANYA TECHNOLOGY                 | **PATENTS-IN-SUIT**
   | CORPORATION; NANYA
18 | TECHNOLOGY CORPORATION,          | [Filed concurrently: Declaration of Peter
   | USA, and NANYA TECHNOLOGY        | J. Wied In Support; and (Proposed)
19 | CORPORATION DELAWARE,            | Order]

20
   |                 Defendants.      | Date:        December 14, 2017
21 |                                  | Time:        8:00 am
   |                                  | Judge:       Hon. William H. Alsup
22 |                                  | Courtroom:   8

23

24

25      REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

26

27

28

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT pursuant to Federal Rule of Civil Procedure 12(a), Defendants Nanya Technology Corporation; Nanya Technology Corporation, USA, And Nanya Technology Corporation Delaware ("Defendant" or "Nanya") hereby moves this Court for an Order dismissing this case, or in the alternative staying the case until the resolution of the currently pending petitions for inter partes review. This Motion is noticed for hearing if necessary on Thursday, December 14, 2017 at 8:00 a.m. in Courtroom 8, 19th Floor, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA before the Hon. William H. Alsup.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Nanya respectfully requests that the Court dismiss the present lawsuit due to Plaintiff Lone Star Silicon Innovations LLC's ("LSSI") lack of standing. In the alternative, if the Court finds the Plaintiff has standing to bring this suit, Nanya respectfully requests that the Court stay the litigation pending *inter partes review* of the Patents-in-Suit.

Although Plaintiff brought this suit in the guise of being the owner of the Patents-in-Suit, the recently produced[1] agreement by which Plaintiff obtained the Patents-in-Suit from the original owner, Advanced Micro Devices ("AMD"), shows that AMD did not, in fact, transfer its patent rights to Plaintiff. At best, AMD granted Plaintiff the right to grant a license to a specific list of companies, and perhaps a right to join in litigation to encourage such licensing activity. But even under this favorable (for Plaintiff) reading of the agreement, Plaintiff simply

---

1 Despite Plaintiff's obligation to produce all relevant documents while this case was pending in the Eastern District of Texas prior to being transferred to this Court, Plaintiff did not produce this document until October 24, 2017.

does not have the right to sue for infringement in its own name, and the lawsuit must be dismissed.

## II.  **FACTUAL BACKGROUND**

The Patents-in-Suit were each issued with Advanced Micro Devices ("AMD") as the assignee. An assignment transferring 31 patents, including the 5 Patents-in-Suit, from AMD to Plaintiff Lone Star Silicon Innovations LLC was executed on August 4, 2016 and recorded at the U.S. Patent Office on August 5, 2016. *See* Declaration of Peter J. Wied ("Wied Decl.") Ex. A.

Also on August 4, 2016, Plaintiff and AMD entered into a Patent Transfer Agreement (the "Agreement"). *See* Wied Decl. Ex. B. The Agreement sets forth the terms under which AMD agreed to transfer the patents to Plaintiff, and the assignment of the patents was "subject to the terms and conditions" of the Agreement. *See* Wied Decl. Ex. A. Plaintiff ████████████████████████████████████████████████████████ Agreement at 5.1. AMD ███████████████████████████. Agreement at 5.4.

The Agreement places a number of restrictions on Plaintiff. Among them, Plaintiff ████████████████████████████. Agreement at 2.6. Any assignment in violation of that provision is "void ab initio." *Id.*

Plaintiff further warranted that ████████████████████████████████████████████████████████████████. Agreement at 6.2(f). Unlicensed Third Party Entity was defined to be limited to the entities (or their Affiliates) listed in Exhibit E to the Agreement. Agreement at p.3. While the parties could

2

1  agree to add additional third-parties to the list in Exhibit E in the future, any

2  additions were "at each [party]'s sole discretion." Agreement at 3.3(c) In the event

3  Plaintiff ███████████████████████████████████████████████████

4  ███████████████████ AMD ██████████████████████████████████

5  ███████████ Agreement at 4.3.

6  ## III.  LEGAL STANDARD

7         Standing to sue is a threshold issue. *Warth v. Seldin*, 422 U.S. 490, 498

8  (1975). It is a jurisdictional question and a matter of law to be determined by the

9  Court. *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1551 (Fed. Cir. 1995) (*en*

10 *banc*). "The party bringing the action bears the burden of establishing that it has

11 standing." *Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 976 (Fed. Cir.

12 2005).

13        "There are three general categories of plaintiffs encountered when analyzing

14 the constitutional standing issue in patent infringement suits: those that can sue in

15 their own name alone; those that can sue as long as the patent owner is joined in

16 the suit; and those that cannot even participate as a party to an infringement suit."

17 *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1339 (Fed. Cir. 2007). The first

18 category consists of patentees or assignee that hold all legal rights in the patent. *Id*.

19 The second category consists of exclusive licensees, namely those who have not

20 only received the right to practice the invention, but also and express or implied

21 promise that others will be excluded from practicing the invention. *See Rite-Hite*,

22 56 F.3d at 1552. The third category includes nonexclusive licensees, who may not

23 even be co-plaintiff's in a suit with the patent owner. *See Sicom*, 427 F.3d at 976.

24 ## IV.  PLAINTIFF DOES NOT HAVE STANDING TO BRING THIS SUIT

25        IN ITS OWN NAME

26    ### a.  PLAINTIFF IS NOT THE ASSIGNEE OF THE PATENTS

27        The first question is whether AMD, in fact, assigned the patents to Plaintiff.

28

3

1   The mere fact that an assignment agreement was executed is not determinative.

2   "We have not allowed labels to control by treating bare formalities of "title"

3   transfer as sufficient to determine that an "assignment" of the entire exclusive right

4   has occurred. Rather, we have explained that, "[t]o determine whether a provision

5   in an agreement constitutes an assignment or license, one must ... examine the

6   substance of what was granted."" *Diamond Coating Technologies, LLC v. Hyundai*

7   *Motor Amer.*, 823 F.3d 615, 618 (Fed. Cir. 2016) (*quoting Vaupel Textilmaschinen*

8   *KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 874 (Fed.Cir.1991)).

9       In order to be an assignment, an agreement must transfer one of three things:

10  (1) the entire patent, (2) an undivided part or share of the entire patent, or (3) all

11  rights under the patent in a specified geographical region of the United States. *See*

12  *Rite-Hite*, 56 F.3d at 1551 (*citing Waterman v. Mackenzie*, 138 U.S. 252, 255

13  (1891)). "A transfer of less than one of these three interests is a license, not an

14  assignment of legal title." *Id*. at 1551-52.

15      While superficially it would appear that the Agreement transferred the entire

16  patents, an assignment must include "all substantial rights in the patent." *Diamond*

17  *Coating*, 823 F.3d at 618. Thus, even though in Diamond Coating the parties

18  signed a document titled "Assignment of Patent Rights" and filed it with the Patent

19  Office, see Wied Decl. Ex. C, the court concluded that the agreement between the

20  parties "did not convey all of the substantial rights in the patents-in-suit" and

21  therefore "Diamond is not a 'patentee' under 35 U.S.C. §281." *Diamond Coating*,

22  823 F.3d at 621. In this case, AMD retained substantial rights in the patents, and

23  therefore the Agreement is only a license, not an assignment.

24      This is clearly seen in the fact that Plaintiff ████████████████

25  ████████████████████████████. "The right to dispose of an asset is an

26  important incident of ownership, and such a restriction on that right is a strong

27  indicator that the agreement does not grant Propat all substantial rights under the

28

4

patent." *Propat Intern. Corp. v. Rpost, Inc.*, 473 F.3d 1187, 1191 (Fed. Cir. 2007).
Indeed, the Federal Circuit has described the restriction of a transferee's ability to
assign its rights as "a fatal reservation of rights" showing that all substantial rights
under the patent where not transferred. *Sicom*, 427 F.3d at 979; *see also id.* ("[j]ust
as the right to alienate personal property is an essential indicia of ownership, the
right to further assign patent rights is implicit in any true assignment" (*quoting
Calgon Corp. v. Nalco Chem. Co.*, 726 F.Supp. 983, 988 (D.Del.1989)). Thus the
restriction on Plaintiff's ability to further assign the patents is fatal to its claim of
being the patentee.

That Plaintiff did not obtain all substantial rights in the patents is further
demonstrated by the limitations on its ability to exclude others under the patents.
"[T]ransfer of the exclusive right to make, use, and sell products or services under
the patent is vitally important to an assignment." *Alfred E. Mann Found. for
Scientific Research v. Cochlear Corp.*, 604 F.3d 1354, 1360 (Fed. Cir. 2010). In
this case, however, Plaintiff ███████████████████████████████████████
███████████████████. Agreement at 6.2(f). While Plaintiff could ███████
████████████████████████████████████████████████████████████████
███████████████████. Agreement at 3.3(c). The fact that
Plaintiff ████████████████████████████████████████████████████
████████████████████ is again fatal to the claim that Plaintiff received all
substantial patent rights. *See Intellectual Property Development, Inc. v. TCI
Cablevision of California, Inc.*, 248 F.3d 1333, 1344 (Fed. Cir. 2001). ("Indeed, a
transferee that receives all substantial patent rights from a transferor would never
need consent from the transferor to file suit because such an assignment essentially
transfers title in the patent to the transferee."); *see also* Diamond Coating, 823 F.3d
at 620 ("[r]etaining control of [licensing or litigation] activities is [ ] critical to
demonstrating that the patent has not been effectively assigned to the licensee."

5

1    Finally, the fact that ███████████████ to the patents further

2   demonstrates that Plaintiff failed to acquire all substantial rights in the patents.

3   *Diamond Coating*, 823 F.3d at 619-20 (Fed. Cir. 2016); *Prima Tek II, L.L.C. v. A-*

4   *Roo Co.*, 222 F.3d 1372, 1379-80 (Fed. Cir. 2000) ("[W]e pay particular attention

5   to whether the agreement conveys *in full* the right to exclude others from making,

6   using and selling the patented invention in the exclusive territory.") (emphasis in

7   original). Likewise, the fact that pre-existing licenses granted by AMD are

8   applicable shows that Plaintiff did not receive all substantial rights. *Abbott Labs. V.*

9   *Diamedix Corp.*, 47 F.3d 1128, 1132-33 (Fed. Cir. 1995).

10    In sum, regardless of how AMD and Plaintiff chose to title the documents

11   they signed, they did not operate to assign the Patents-in-Suit from AMD to

12   Plaintiff. Since Plaintiff possesses neither the entire patent rights nor all substantial

13   rights, it cannot sue in its own name alone. *Morrow*, 498 F.3d at 1339-40.

14    **b.  PLAINTIFF IS NOT AN EXCLUSIVE LICENSEE**

15    The question then becomes whether Plaintiff has sufficient standing to act as

16   a co-plaintiff if AMD is added to the lawsuit. If Plaintiff is a "bare" licensee, its

17   standing deficiency cannot be cured by the addition of AMD. *Id.* at 1341. Only if

18   Plaintiff is an "exclusive" licensee can it assert the patents as a co-plaintiff with

19   AMD.

20    "To be an exclusive licensee for standing purposes, a party must have

21   received, not only the right to practice the invention within a given territory, but

22   also the patentee's express or implied promise that others shall be excluded from

23   practicing the invention within that territory as well." *Rite-Hite*, 56 F.3d at 1552

24   (Fed. Cir. 1995) (*en banc*). The Agreement contains ███████████████

25   ██████████████████████████████████████████

26   ████████████████████████████████. Agreement at

27   4.3. Indeed, this express contemplation that ████████████████████

28

6

1  ▮▮▮▮▮▮▮▮▮▮ means that there is no implied exclusive license to Plaintiff.

2  *WiAV Solutions LLC v. Motorola Inc*., 631 F.3d 1257, 1266 (Fed. Cir. 2010)

3  ("courts will not imply an exclusive license when there is no indication that the

4  licensor granted its licensee any of the exclusionary rights in a patent.")

5  Indeed, the Agreement demonstrates that the parties knew how to provide

6  exclusivity when desired. Section 6.2(f) provides that ▮▮▮▮▮▮▮▮▮▮▮▮

7  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8  ▮▮▮▮  There is, however, no corresponding prohibition on ▮▮▮▮▮▮

9  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Thus there is no

10  express or implied promise of exclusivity even with respect to those companies

11  listed in Exhibit E.

12  Instead, all the Agreement gives Plaintiff is the right to sublicense the

13  patents to certain, specified parties, in exchange for ▮▮▮▮▮▮▮▮▮▮▮

14  ▮▮▮▮▮▮▮▮▮. In this respect, the agreement is similar to that analyzed

15  by the Federal Circuit in *Ortho Pharmaceutical Corp. v. Genetics Institute, Inc*., 52

16  F.3d 1026 (1995). In that case, the agreement between Amgen (the patent owner)

17  and Ortho purported to give Ortho the right to bring suit in the event Amgen did

18  not. *Id*. at 1034. The Federal Circuit held that the right to sue clause had no effect,

19  as "a contract cannot change the statutory requirement for suit to be brought by the

20  'patentee.'" *Id*. Because Plaintiff is not an exclusive licensee, it does not matter

21  whether the parties intended Plaintiff to be able to sue (individually or as co-

22  plaintiff), and the case must be dismissed for lack of standing.[2]

23

24

25

26  _____

27  2 Even if the Court were to conclude that Plaintiff is, at least to some limited
   degree, an exclusive licensee, it would still need to join AMD as a co-plaintiff to

28  satisfy prudential standing concerns. *See*, *e.g*., *Morrow*, 499 F.3d at 1340.

7

_____

MOTION TO DISMISS OR STAY PENDING INTER PARTES REVIEW OF THE PATENTS-
IN-SUIT
CASE NO. 3:17-CV-04032

1

2   **V.    ALTERNATIVELY, THE COURT SHOULD STAY THE CASE**

3          **PENDING THE RESOLUTION OF THE NUMEROUS INTER**

4          **PARTES REVIEW PETITIONS**

5          In the event the Court concludes that Plaintiff has standing to bring this suit

6   in its own name, and without having to join AMD, the Court should stay the case

7   pending the multiple IPR petitions that have been filed against all of the patents

8   asserted against Nanya. This issue has been briefed extensively in the related cases

9   against Renesas (Case No. 3:17-cv-03981-WHA, Dkt Nos. 80 and 91) and Micron

10  (Case No. 3:17-cv-05458-WHA, Dkt Nos. 31 and 33), which motions are

11  scheduled to be heard by this Court on November 9, 2017. Because the rationale

12  for the stay is largely the same with respect to Nanya, Nanya will not burden the

13  Court by repeating the arguments set forth in those briefs.

14         As summarized in Renesas' reply brief, see Case No. 3:17-cv-03981-WHA,

15  Dkt No. 91, at p.4, two of the patents asserted against Nanya are the subject of two

16  pending petitions (one each by Nanya and Micron), two of the patents are the

17  subject of three pending petitions (one each by Nanya, Micron, and Renesas), and

18  one of the patents is the subject of four pending petitions (one each by Nanya,

19  Micron, Renesas, and Toshiba). In light of these 14 pending IPR petitions, there is

20  a virtual certainty that the proceedings will serve to narrow some of the issues in

21  this litigation.

22         Nanya therefore respectfully requests that, if the Court does not dismiss the

23  case for lack of standing, the Court stay the litigation at through the institution

24  decisions regarding the patents in suit; in the likely event that the petitions are

25  granted and inter partes review is instituted, the stay should be extended until the

26  conclusion of those proceedings. "Courts have inherent power to manage their

27  dockets and stay proceedings, including the authority to order a stay pending

28

8

1  conclusion of a PTO reexamination." *Evolutionary Intelligence I*, 2014 WL 93954

2  at *2 (Alsup, J.) (citing *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed. Cir.

3  1988)). The requested stay will serve to simply the issues before this court and

4  preserve judicial resources, particularly in light of the early stage of this litigation.

5  **VI.   CONCLUSION**

6          This case presents an attempt by AMD to effectively "outsource" its patent

7  litigation, seeking to have a third party enforce its patents and collect (unjustified)

8  royalties, while insulating itself from the costs and burdens of litigation. The law,

9  however, does not allow for such manipulation of the patent system. Because

10  AMD did not effectively assign the patents to Plaintiff, Plaintiff has no standing to

11  sue in its own name and the case should be dismissed.

12         Alternatively, for the same reasons as fully set forth in the briefs by Micron

13  and Renesas in those related cases, the Court should stay this litigation in light of

14  the multitude of pending petitions for inter partes review, covering every one of the

15  patents asserted against Nanya.

16

17

18  DATED:  November 7, 2017          LTL ATTORNEYS LLP

19

20                                    By   /s/Peter J. Wied
21                                       Vincent K. Yip
                                         Peter J. Wied
22                                       Casey H. Kempner
                                         Counsel for Defendants
23                                    Nanya Technology Corporation,
                                      Nanya Technology Corporation U.S.A.,
24                                    and Nanya Technology Corporation Delaware

25

26

27

28
                                          9